—————————————————————————

| | |
|---|---|
| KATHRYN K. CULLEY and CHRISTIAN P. CULLEY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BANK OF AMERICA, N.A., FIRST AMERICAN TITLE INSURANCE COMPANY, WELLS FARGO BANK, N.A., and HARMON LAW OFFICES, P.C., | ) ) ) ) ) |
| Defendants. | ) ) |

**CIVIL ACTION**
**NO. 18-cv-40099-DHH**

—————————————————————————

## ORDER

**March 29, 2019**

Hennessy, M.J.

Plaintiffs Kathryn K. Culley and Christian P. Culley (together, "Plaintiffs") brought this

action against Bank of America, N.A. ("Bank of America"), Wells Fargo Bank, N.A. ("Wells

Fargo"), First American Title Insurance Company ("First American"), and Harmon Law Offices,

P.C. ("Harmon," and together with Bank of America, Wells Fargo, and First American, the

"Defendants") seeking relief in relation to the foreclosure of Plaintiffs' home.  With their

verified complaint, Plaintiffs filed an emergency motion for a preliminary injunction barring the

current eviction proceedings against them in Central Housing Court.  See dkt. no. 4 (motion for

preliminary injunction); see also Bank of Am., N.A. v. Culley, 18H85SP002517 (Mass. Hous.

Ct. June 12, 2018).  Bank of America and Wells Fargo (together, the "Bank Defendants")

opposed the preliminary injunction motion.  Dkt. no. 25.  All Defendants have filed motions to

dismiss Plaintiffs' verified complaint.  See dkt. no. 12 (Harmon motion); dkt. no. 19 (First

American motion); dkt. no. 22 (Bank Defendants motion).  Plaintiffs have opposed First

American's and the Bank Defendants' motions to dismiss.  See dkt. nos. 32, 40.  Harmon's

motion to dismiss is unopposed.

The Court heard the parties on Plaintiffs' motion for a preliminary injunction and

Defendants' dismissal motions on July 26, August 24, and September 25, 2018.  Dkt. nos. 33, 37,

43.  At the Court's direction, the Bank Defendants and Plaintiffs submitted further briefing.  See

dkt. nos. 44, 45.  Having reviewed the parties' submissions and for the reasons that follow,

Harmon's motion to dismiss (dkt. no. 12) is GRANTED; First American's motion to dismiss

(dkt. no. 19) is GRANTED; Bank Defendants' motion to dismiss (dkt. no. 22) is GRANTED;

and Plaintiffs' motion for a preliminary injunction (dkt. no. 4) is DENIED.

I.      BACKGROUND

        A.      The Note and Mortgage

On September 30, 2005, Plaintiffs acquired the property known as 22A Lovers Lane in

Southborough, Massachusetts (the "Property") by quitclaim deed.  Dkt. no. 3 ("Complaint"), at

p. 19 ¶ 25;[1] dkt. no. 3-2, at pp. 2–3 (copy of deed).  The purchase price was $978,500.  Dkt. no.

3-2, at pp. 2–3.

To purchase the Property, Plaintiffs obtained a loan in the amount of $550,000 from non-

party Gateway Funding Diversified Mortgage Services, L.P. ("Gateway").  Complaint, at p. 22 ¶

39.  The loan was evidenced by a promissory note (the "Note"), dated September 30, 2005 in

favor of Gateway.  See id.; see also dkt. no. 3-4, at pp. 23–25 (copy of Note).  As security for the

Note, Plaintiffs executed a mortgage on the Property in the principal amount of $550,000 (the

---

[1] Plaintiffs' complaint assigns the same number to multiple paragraphs.  For clarity's sake, this Order refers to both
page and paragraph numbers of the complaint.

"Mortgage"). Complaint at p. 21, ¶ 33; dkt. no. 3-4, at p. 27 (copy of Mortgage). The Mortgage identified Gateway as the lender and named Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Gateway, as the mortgagee of record. Dkt. no. 3-4, at p. 27. The Mortgage was recorded in the Worcester South Registry of Deeds (the "Registry of Deeds") on September 30, 2005. Id.

At some point in time, Gateway endorsed the Note in blank. Dkt. no. 3-5, at p. 15. At a later time, Gateway endorsed the Note to Wells Fargo. Dkt. no. 3-2, at p. 17. Wells Fargo thereafter endorsed the Note in blank. See dkt. no. 3-4, at p. 25. On April 2, 2011, MERS, as nominee for Gateway, assigned the Mortgage to Bank of America (the "Assignment of Mortgage"). Dkt. no. 23-2, at p. 2. The Assignment of Mortgage was recorded in the Registry of Deeds on August 1, 2011. Id.

B.     Property Defects and Other Litigation

Shortly after Plaintiffs acquired the Property, they learned that it lacked both regulatory septic system approval and a certificate of occupancy. Significant structural defects and other issues surfaced as well.[2] In response, Plaintiffs filed various grievances. For example, Plaintiffs lodged complaints against the builder/vendor involved in the Property's construction, as well as the engineer. Both had their licenses revoked. See dkt. no. 18-1, at p. 20 n.3; dkt. no. 3-2, at pp. 50–54. In 2009, Plaintiffs also filed a claim with their title insurer, First American. See dkt. no. 3-2, at pp. 32–33. First American denied Plaintiffs' claim because the Property's structural and regulatory issues were unrelated to its title. See dkt. no. 3-5, at pp. 80–82 ("The refusal of a third party to purchase your Property due to other reasons, such as code violations, structural defects,

---

[2] For a detailed background on Plaintiffs' experiences respecting the Property, see Culley v. Authentic Traditions, LLC, 15-P-1020, 2016 WL 6235754, at *1 (Mass. App. Ct. Oct. 25, 2016), further app. rev. denied, 65 N.E.3d 663 (tbl.), 476 Mass. 1107 (Dec. 22, 2016); see also generally Culley v. Cato, 953 N.E.2d 184 (Mass. 2011).

or other physical aspects of your Property is not an unmarketability <u>of title</u> matter that would be covered under your Policy.").

Plaintiffs also took legal action separate from the instant case. In 2006, they sued the sellers and contractors of the Property. <u>See</u> <u>Culley</u>, 2016 WL 6235754, at *1. That litigation spanned ten years and two trials. <u>See</u> <u>id.</u> First, in 2010 a jury awarded Plaintiffs $1,093,487 in damages. <u>Id.</u> at *2. However, the trial judge deemed the verdict excessive and ordered a new trial unless Plaintiffs accepted a remittitur to $140,518. <u>Id.</u> Plaintiffs did not accept, and during the second trial declined to offer evidence of the damages they had won at the first trial.[3] <u>Id.</u> The case proceeded as a bench trial, and the judge ultimately awarded Plaintiffs $25 in nominal damages, and about $259,000 in attorneys' fees and costs. <u>Id.</u> at *3. The judgment was affirmed on appeal. <u>Id.</u> at *6.

C.     <u>Default, Foreclosure, and Subsequent Conduct</u>

In April 2010, Wells Fargo advised Plaintiffs that their loan was in default after they had stopped making payments in February 2010. <u>See</u> dkt. no. 3-4 at 15 (letter to Plaintiffs from Harmon). Plaintiffs apparently informed Wells Fargo that they were in litigation against the seller and builder; in a letter dated August 13, 2010, Wells Fargo agreed to suspend debt collection and foreclosure activities through December 31, 2010, "to allow time for a ruling to be made on the current ongoing litigation regarding [the Property]." Dkt. no. 3-3, at p. 5. In a subsequent letter dated March 8, 2011, Wells Fargo again agreed to suspend foreclosure activities, writing: "At this time, [Wells Fargo] does not anticipate any further foreclosure action until the litigation issues involving this property have been resolved." Dkt. no. 3-3, at p. 20. The

_____

[3] The judge precluded Plaintiffs' expert from expanding at the second trial on the damages to which the expert had testified at the first trial. <u>Id.</u> Plaintiffs took the position that the expert could not ethically testify that their damages were limited in this way. <u>Id.</u> Apparently for this reason, the Plaintiffs chose not to call the expert at all, did not find another expert to testify, and offered no expert testimony on damages at the second trial. <u>Id.</u>

letter further noted that a Wells Fargo employee would "continue to monitor [the] mortgage loan and provide [Plaintiffs] with periodic status updates."  Id.

In May 2012, Wells Fargo filed a Servicemembers Civil Relief Act ("SCRA") complaint against Plaintiffs in Massachusetts Land Court.  See id. at 24.  In August 2012, the Land Court entered a judgment, concluding that Plaintiffs were not entitled to the benefits of the SCRA.  Id. at 27.  On August 31, 2016, Wells Fargo mailed Plaintiffs a letter notifying them that they had ninety days to cure their default on the loan.  Id. at 58.  Wells Fargo retained Harmon to handle foreclosure proceedings.  See id. at 68.  After fairly extensive correspondence among Plaintiffs, Wells Fargo, and Harmon, foreclosure proceedings were initiated.  See id. at 88.

A foreclosure sale was scheduled for October 18, 2017.  See dkt. no. 3-5, at 24.  The sale ultimately was postponed to January 3, 2018.  Id. at 29.  On January 3, 2018, Bank of America purchased the Property at the foreclosure sale for $522,000 after two other bidders failed to perform.  Id. at 62.  Bank of America is the current owner of record.  Id. at 46; see also id. at 59–61 (foreclosure deed).

On May 23, 2018, Harmon, on behalf of Bank of America, initiated eviction proceedings by mailing Plaintiffs a "72 hour notice to quit and vacate premises."  Id. at 69–70.  On June 1, 2018, a summary process eviction proceeding was initiated in Central Housing Court.  See id. at 72.  Facing eviction, Plaintiffs filed the instant action on June 11, 2018, alleging that the foreclosure sale was void and moving to enjoin the eviction proceedings.  See dkt. nos. 1, 3, 4.

On July 26, 2018, the Court granted Bank of America's oral motion to continue the preliminary injunction hearing in order resolve all pending motions at the same time, based on Bank of America's representation that it would not act on the Central Housing Court eviction proceeding until the motions were resolved.  Dkt. no. 34.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Indeed, plausible "means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on [its] judicial experience and common sense.'" Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679).

Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . . The threshold for stating a claim may be low, but it is real." Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted). The complaint must therefore "allege a factual predicate concrete enough to warrant further proceedings." DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (emphasis in original). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that [the] plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharm., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

The court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies an exception to this rule "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to [a plaintiff's] claim; or for documents sufficiently referred to in the complaint." Rivera, 575 F.3d at 15 (quoting Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

Notwithstanding the above, the Court must apply a liberal standard where, as here, the Plaintiffs' complaint was filed pro se. Sergentakis v. Channell, 272 F. Supp. 3d 221, 224 (D. Mass. 2017) (citing Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 5 (D. Mass. 2004)). A liberal construction of pro se pleadings is necessary "to avoid inappropriately stringent rules and unnecessary dismissals." Sergentakis, 272 F. Supp. 3d at 224 (citation omitted).

III.    ANALYSIS RESPECTING MOTIONS TO DISMISS

This analysis presents the Court's attempt to delineate Plaintiffs' causes of action and complained-of conduct.

A.    Foreclosure Notice and Process

The best reading of Plaintiffs' complaint reveals several allegations that the Bank Defendants and Harmon unlawfully and improperly commenced and completed foreclosure

proceedings. Specifically, the complaint alleges that: (i) the published notice of foreclosure was deficient; (ii) the Assignment of Mortgage to Bank of America was legally ineffective; (iii) Bank of America lacked authority to enforce the Note and foreclose; (iv) the Bank Defendants failed to make a public proclamation continuing the foreclosure sale, and thus the sale was not properly noticed; and (v) the Bank Defendants failed to comply with pre-foreclosure notice requirements. I address each contention in turn.

1.      Deficient Notice of Foreclosure

"Under Massachusetts choice of law principles, claims arising in connection with foreclosures of real property are . . . governed by the law of the state in which the land is located." Pearson v. United States, 905 F. Supp. 2d 400, 403 (D. Mass. 2012) (citing United Guar. Residential Ins. Co. v. O'Neil, No. 933004D, 1994 WL 879614, at *1 (Mass. Super. Ct. June 27, 1994) (stating "[t]he mechanics of foreclosure, including what notice ha[s] to be given," are determined by the law of the situs)). In Massachusetts, "[a] foreclosure sale conducted pursuant to a power of sale in a mortgage must comply with all applicable statutory provisions, including in particular . . . [Massachusetts General Laws ch.] 244, § 14." Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1121 (Mass. 2012). Section 14 prescribes the form and method of publication of notice of a foreclosure sale. Prior to foreclosure under a power of sale, the statute requires a mortgagee to publish notice of the sale in a local newspaper "once in each of three successive weeks, the first publication to be not less than twenty-one days before the day of sale," and that the notice be sent by registered mail to the owner of record. MASS. GEN. LAWS ch. 244, § 14. Registered mail, for purposes of sending notice, includes certified mail. MASS. GEN. LAWS ch. 4, § 7. Section 14 further provides that when a mortgagee holds a mortgage

pursuant to an assignment, the notice of foreclosure is valid only if:

> (i) at the time such notice is mailed, an assignment, or a chain of assignments, evidencing the assignment of the mortgage to the foreclosing mortgagee has been duly recorded in the registry of deeds for the county or district where the land lies and (ii) the recording information for all recorded assignments is referenced in the notice of sale required in this section.

Mass. Gen. Laws ch. 244, § 14.

Here, Plaintiffs' last monthly loan payment was received in February 2010. See dkt. no. 3-3, at p. 5 ("As of the date of this letter your loan is showing due for the March 2010 payment."); id. at 58 (containing 90-day cure letter and noting Plaintiffs did not make the monthly payment due March 2010 or any other payment due thereafter). On August 31, 2016, Wells Fargo, as the loan servicer, issued a 90-day right to cure letter to Plaintiffs. Id. at 58–64. Harmon, on behalf of mortgagee Bank of America and servicer Wells Fargo, caused a notice of sale for October 18, 2017 to be published in the Worcester Telegram & Gazette, once a week for three successive weeks, beginning September 22, 2017. See dkt. no. 3-5, at pp. 62–64 (containing copy of Affidavit of compliance with sale procedures and copy of sale notice). The sale notice was sent to Plaintiffs via certified mail on September 19, 2017. Id. at 6. At the time the notice was mailed and published, the Assignment of Mortgage to Bank of America had been recorded in the Registry of Deeds. Dkt. no. 23-2, at p. 2.[4] Recording information was referenced in the notice of sale. Dkt. no. 3-5, at p. 7. Plaintiff's conclusory allegations fail to controvert the record evidence of compliance with Mass. Gen. Laws ch. 244, § 14, or to make Plaintiffs' claim plausible on its face.

---

[4] While the Assignment of Mortgage is not appended to Plaintiffs' complaint in full, documents referred to in the complaint and central to a plaintiff's claim may be considered on a motion to dismiss. Rivera, 575 F.3d at 15; Alt. Energy, Inc., 267 F.3d at 33.

2.      Assignment of Mortgage to Bank of America

Plaintiffs next allege that the Assignment of Mortgage from MERS to Bank of America is invalid because Wells Fargo was the real owner of the Mortgage at the time MERS assigned the Mortgage to Bank of America.  This claim simply lacks plausibility.  The predicate for Plaintiffs' claim is a thin reed: the original loan number associated with the mortgage loan bears a reference to Wells Fargo.  See, e.g., dkt. no. 3-2, at p. 5.  In other words, the original mortgage loan given to Plaintiffs by Gateway contained an identification number for a Wells Fargo loan.  This isolated reference does not remotely evidence an ownership interest of Wells Fargo in the mortgage loan.  Rather, the record establishes ownership interests in Gateway and Bank of America only.  Indeed, the Registry of Deeds provides the full chain of title: the Mortgage identifying Gateway as lender and MERS as nominee was recorded in the Registry of Deeds on September 30, 2005.  Dkt. no. 3-4, at p. 27.  MERS, on behalf of Gateway, assigned the Mortgage to Bank of America on April 2, 2011. Dkt. no. 23-2, at p. 2.  The Assignment of Mortgage was recorded in the Registry of Deeds on August 1, 2011 and is the only recorded assignment respecting the Mortgage.  Id.  Bank of America therefore was the mortgagee of record when nonjudicial foreclosure proceedings commenced.  In addition, Plaintiffs' claim overlooks the fact that mortgagees may predetermine securitization and servicing information for mortgage loans prior to lending.  As such, Plaintiffs' allegation is not plausible.  Twombly, 550 U.S. at 570.

3.      Authority to Enforce the Note

Plaintiffs further allege that Bank of America was not entitled to foreclose because it did not have the authority to enforce the Note at the time foreclosure proceedings were commenced. This allegation is unsupportable and fails.  To be valid, "a foreclosure effected through the

statutory power of sale, as governed by and set forth in [Mass. Gen. Laws ch.] 183, § 21, and [ch.] 244, §§ 11–17C, requires the mortgagee to hold the note or to act on behalf of the note holder." Galiastro v. Mortg. Elec. Registration Sys., Inc., 4 N.E.3d 270, 276 (Mass. 2014) (citing Eaton, 969 N.E.2d at 1131). Massachusetts law permits one who, although not the noteholder himself, acts as the agent of the noteholder and stands "in the shoes" of the mortgagee to effectuate a foreclosure. Eaton, 969 N.E.2d at 1131. Massachusetts law thus requires that an affidavit pursuant to Mass. Gen. Laws ch. 183, § 54B be recorded in the Registry of Deeds, whereby the affiant attests that it either holds the mortgage and note or is acting on behalf of the party entitled to foreclose. Id. at 1133 n.28 ("[The law] allows for the filing of an affidavit that is 'relevant to the title to certain land and will be of benefit and assistance in clarifying the chain of title.' Such an affidavit may state that the mortgagee either held the note or acted on behalf of the note holder at the time of the foreclosure sale." (quoting MASS. GEN. LAWS ch. 183, § 5B)).

Here, foreclosure proceedings commenced in September 2017 when the notice of sale was first published. Dkt. no. 3-5, at pp. 62–64. The February 1, 2018 affidavit of Kishia Givens of Wells Fargo attests that Bank of America was "the holder of the promissory note" when nonjudicial foreclosure proceedings commenced. Id. at 67. This affidavit was recorded in the Registry of Deeds pursuant to § 54B. Id. at 66. It serves as sufficient proof that Bank of America held the Note at the time the notice of sale was published, and through the foreclosure sale. Id.

A review of the record reveals three copies of the Note. One copy shows the Note endorsed by Gateway in blank. A second copy shows "Wells Fargo Bank, N.A." stamped into the blank endorsee field of the previous endorsement, which reflects a transfer from Gateway to Wells Fargo. Third, the last (and most recent) copy of the Note reflects a third endorsement,

from Wells Fargo in blank.[5]  The effect of an endorsement in blank is that a note is enforceable

by proof of possession alone.  See U.C.C. § 3-205(b) (AM. LAW INST. & UNIF. LAW COMM'N

1977) ("If an indorsement is made by the holder of an instrument and it is not a special

indorsement, it is a 'blank indorsement.'  When indorsed in blank, an instrument becomes

payable to bearer and may be negotiated by transfer of possession alone until specially

indorsed."); Id. § 3-301 (stating that the party entitled to enforce an instrument means "(i) the

holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a

holder, or (iii) a person not in possession of the instrument who is entitled to enforce the

instrument" under other sections of the Code); see also Courtney v. U.S. Bank, N.A., 922 F.

Supp. 2d 171, 174 (D. Mass. 2013).  Because the Note is endorsed in blank, its holder is entitled

to enforce it.  In this case, that is Bank of America.

　　　　For these reasons, Plaintiffs' conclusory and unsupported claim that Bank of America

lacked authority to enforce the Note at the time the foreclosure was noticed is subject to

dismissal.  See Ruiz Rivera, 521 F.3d at 84.

　　　　4.　　　　Sale Adjournment and Public Proclamation

　　　　Plaintiffs allege that they did not receive notice that the foreclosure sale, originally

scheduled for October 18, 2017, was adjourned to December 20, 2017 and then again to January

3, 2018.  Complaint, p. 8 ¶ 13.  This allegation is squarely undermined by several documents

attached to the complaint:  First, a letter from Harmon dated October 18, 2017, informed

Plaintiffs that the foreclosure sale scheduled for that day had been postponed to December 20,

2017.  Dkt. no. 3-5, at p. 24.  Second, a letter from Harmon dated October 23, 2017, informed

Plaintiffs that the sale scheduled for December 20, 2017 "has been postponed until January 3,

---

[5] Plaintiffs received this copy of the Note as part of Harmon's April 11, 2017 response to Plaintiffs' 93A demand letter, months before the notice of sale was published.  See dkt. 3-4, at pp. 23–25.

2018 at 11:00 a.m." Id. at 29 (emphasis in original). These letters belie Plaintiffs' failure to notice allegation.

Plaintiffs further allege that the sale on January 3, 2018 was improper because public proclamations were not made on October 18, 2017 or December 20, 2017. Complaint, at p. 16 ¶ 30. To support their allegation of no proclamation on October 18, 2017, Plaintiffs rely on a video they recorded at the Property on that date. Dkt. no. 40, at p. 7. However, as Plaintiffs conceded at the September 25, 2018 hearing, the video does not capture all of the auctioneer's conduct, as it cuts off before the auctioneer left. Hence, the Court is left with Plaintiffs' bald allegation of no public proclamation on October 18, 2017. Plaintiffs' allegation of no proclamation on December 20, 2017 is similarly unsupported.

Both allegations are contradicted by the Affidavit of Sale of Drew Champigny, dated April 10, 2018 and filed in the Registry of Deeds ("Affidavit of Sale"). Dkt. no. 3-5, at pp. 62–63. It recounts that the sale was postponed to December 20, 2017 by public proclamation on October 18, 2017. Id. On December 20, 2017, the sale was again postponed by public proclamation to January 3, 2018. Id. Two bidders participated in the January 3, 2018 sale, Reem Property, LLC and John Avella. When either failed to perform under the terms of the sale memorandum, Bank of America purchased the Property with a bid equal to that of the second-highest bidder. Id. Since these bidders participated in the auction, the logical, if not only inference, is that a public proclamation was made on December 20, 2017. These bidders had notice of, and competitively bid at, the January 3, 2018 sale.

Apart from the record, there is no "hard and fast rule" for noticing adjournments of a foreclosure sale by public proclamation. Fitzgerald v. First Nat'l Bank of Boston, 703 N.E.2d 1192, 1194–95 (Mass. App. Ct. 1999). Indeed, the procedure utilized for foreclosure sale

postponements falls under the good faith and commercial reasonableness obligations of a mortgagee. Id. ("Apart from the statutory requisites, to which the mortgagee must strictly adhere, questions regarding notice of foreclosure proceedings will continue to be viewed according to the criteria set forth in our cases, rather than under any hard and fast rule, in light of the mortgagee's general obligations of good faith, diligence, and fairness in the disposition of the mortgaged property." (citations omitted)). For example, while normally a sufficient means to notice a postponement, a public proclamation may not be sufficient where (i) no one besides the auctioneer and mortgagee is present to hear the proclamation and (ii) the mortgagee did not take measures to apprise the borrower of the adjournment. See Clark v. Simmons, 23 N.E. 108, 108–109 (Mass. 1890). Under Massachusetts law, the mortgagor has the burden of proving commercial unreasonableness. Burke v. Sun Am., Inc., No. CV984842, 2000 WL 1273412, at *7 (Mass. Super. Ct. Apr. 25, 2000) (citing Chartrand v. Newton Tr. Co., 5 N.E.2d 421, 423 (Mass. 1936)).

Here, given that Harmon mailed notices of the adjournments to Plaintiffs, that the record includes a sworn and uncontroverted statement that both dates were continued by public proclamation, and that two private parties participated in the foreclosure sale on the date to which the foreclosure was ultimately continued, Plaintiffs' allegation that no public proclamations were made is entirely conclusory. Moreover, even if public proclamations were not made, Plaintiffs can prevail only if they offer some factual evidence of commercial unreasonableness. They have failed to do so, and the claim is therefore dismissed.[6]

---

[6] To the extent Plaintiffs' allegation that Bank of America failed to pay fair market value for the Property supports a claim of commercial unreasonableness, the allegation is addressed in § III.B.4.

5.  Compliance with Mass. Gen. Laws ch. 244, §§ 35A and 35B

Finally, Plaintiffs allege that the Bank Defendants failed to comply with Mass. Gen. Laws ch. 244, §§ 35A and 35B prior to foreclosure.  This allegation is not plausible.  Section 35A requires a mortgagee to notify the mortgagor of the right to cure a default.  MASS. GEN. LAWS ch. 244, § 35A.  Plaintiffs were mailed a 90-day right to cure letter in compliance with § 35A.  But even still, any violation of § 35A would have had to render the foreclosure so "fundamentally unfair" so as to warrant the setting aside of the foreclosure sale "for reasons other than failure to comply strictly with the power of sale provided in the mortgage." U.S. Bank Nat'l Ass'n v. Schumacher, 5 N.E.3d 882, 891 (Mass. 2014) (Gants, J., concurring) (quoting Bank of Am., N.A. v. Rosa, 999 N.E.2d 1080, 1088 (Mass. 2013)).  There is nothing deceptive or unfair about the 90-day right to cure notice.  Plaintiffs had been in default for over six years prior to service of the notice.  The notice complied with Massachusetts pre-foreclosure notice requirements, is not part of the foreclosure process itself, Schumacher, 5 N.E.3d at 890 (Spina, J.), and thus Plaintiffs' claim respecting § 35A must fail.

Section 35B requires a mortgagee to take reasonable steps in good faith to avoid foreclosure, which may include noticing a right of a mortgagor to pursue a modified mortgage. Neither the Mortgage nor the Note requires the Bank Defendants to modify Plaintiffs' loan, and there is no independent legal requirement to do so.  See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 493 (1st Cir. 2013) (noting lender does not have a legal duty in the absence of a contractual promise to consider loan modification prior to foreclosure); Peterson v. GMAC Mortg., LLC, 11-cv-11115-RWZ, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011) ("Under Massachusetts case law, absent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults.") (citation omitted).  Plaintiffs

recognize as much.  See Complaint, at p. 38 ¶ 83 n.20 ("If the investor would be better off if the servicer forecloses on the loan, rather than modifies the loan . . . then the servicer doesn't have to modify the loan.").  Moreover, beyond the legal fact that there was no obligation to modify, the record reflects patience on part of the Bank Defendants, as they accepted Plaintiffs' request to stay foreclosure for years while the Plaintiffs pursued litigation against the Property contractors.  As of December 2016, Plaintiffs owed $511,189.95 in principal and $312,041.82 in interest and other charges for a total of $823,231.77.  See dkt. no. 3-3, at p. 68 (letter to Plaintiffs from Harmon).  Thus, to the extent Plaintiffs seek relief for failure to modify or act in good faith, the claim lacks merit and is subject to dismissal.

      B.     Chapter 93A

"Chapter 93A 'proscribes unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'"  HMC Assets, LLC v. Conley, 14-cv-10321-MBB, 2016 WL 4443152, at *31 (D. Mass. Aug. 22, 2016) (quoting Juárez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 280 (1st Cir. 2013); MASS. GEN. LAWS ch. 93A, § 2).  A practice is deemed unfair if it falls "within the penumbra of some common-law, statutory, or other established concept of unfairness; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury."  Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 240 (1st Cir. 2013) (quoting Linkage Corp. v. Trs. of Boston Univ., 679 N.E.2d 191, 209 (Mass. 1997)).  Factors critical in determining fairness under Chapter 93A are (i) "the nature of [the] challenged conduct" and (ii) the "purpose and effect of that conduct."  Mass. Emps. Ins. Exch. v. Propac-Mass, Inc., 648 N.E.2d 435, 438 (Mass. 1995).  "A practice is deceptive 'if it could reasonably be found to have caused a person to act differently from the way he or she otherwise would have acted.'"  Conley, 2016 WL 4443152, at *31 (quoting Aspinall v. Philip Morris Cos., 813 N.E.2d

476, 486 (Mass. 2004)).  Moreover, in order to demonstrate a 93A violation, a plaintiff must show that a defendant engaged in "extreme or egregious" conduct.  Baker v. Goldman, Sachs & Co., 771 F.3d 37, 51 (1st Cir. 2014).

Plaintiffs' Chapter 93A claim alleges that the Bank Defendants and Harmon conducted fraudulent and deceptive foreclosure proceedings in that:  (i) Bank of America's Assignment of Mortgage was ineffective because the chain of assignments never included Wells Fargo; (ii) the original Note was never produced to Plaintiffs; (iii) the Bank Defendants and Harmon failed to strictly comply with the notice and publication requirements respecting nonjudicial foreclosure sales, including the failure attach a true copy of the Note to the 209 C.M.R. 18.21A certification; and (iv) the Bank Defendants and Harmon did not obtain an appropriate price for the Property at the foreclosure sale given its fair market value.[7]  I address each in turn.

1.      Assignment of Mortgage

Plaintiffs first allege that the Assignment of Mortgage from MERS to Bank of America is void and fraudulent because it does not account for Wells Fargo's alleged interest in the Mortgage.  This claim fails for the reasons discussed above respecting Plaintiffs' notice allegations.[8]  Moreover, Plaintiff cannot demonstrate extreme or egregious conduct, let alone negligence, respecting the Assignment of Mortgage.  See Baker, 771 F.3d at 51.

2.      Failure to Produce Original Note

Plaintiffs allege that the Bank Defendants failed to produce the original Note as proof that Bank of America was entitled to foreclose.  Complaint, at p. 39 ¶ 85.  Nothing in Mass. Gen.

---

[7] To the extent Plaintiffs' Chapter 93A claims also include allegations respecting the lack of a certificate of occupancy at closing or the so-called Obsolete Mortgage Statute, those issues are addressed below.  See infra §§ III.F and III.G.

[8] See supra § III.A.2 (discussing valid assignment to Bank of America).

Laws ch. 244, § 14 requires a mortgagee to produce the original Note to conduct a nonjudicial foreclosure. Nor is there any such requirement under 209 C.M.R. 18.21A. Instead, as discussed above, Massachusetts law requires that a third-party loan servicer provide a "certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon" and "a copy of the note with all required endorsements." 209 C.M.R. 18.21A(2)(c). Because the law does not require the original Note be produced to the mortgagor to effectuate a valid foreclosure, this allegation fails to state a plausible claim.[9] Twombly, 550 U.S. at 570.

> 3.      Failure to Strictly Comply with Regulatory Obligations

Next the Plaintiffs allege that the Bank Defendants failed to strictly comply with 209 C.M.R. 18.21A, in violation of ch. 93A. Specifically, Plaintiffs allege that the failure to include with the 209 C.M.R. 18.21A(2)(c) certification a copy of the correct version of the Note—that is, one with all endorsements—violates ch. 93A and case law requiring strict compliance with the nonjudicial foreclosure statutes in order to effectuate a valid sale.

A violation of 209 C.M.R. 18.21A "shall be considered an unfair or deceptive act or practice under M.G.L. c. 93A, § 2 and subject to the penalties contained in M.G.L. c. 93A. See 209 C.M.R. 18.22(1); see also Johnson v. Wilmington Tr., N.A., 16-cv-10422-IT, 2016 WL 5109510, at *5 (D. Mass. Sept. 20, 2016). The regulation provides additional requirements that must be met by a loan servicer, such as Wells Fargo, to initiate a foreclosure proceeding:

> A third party loan servicer shall certify in writing the basis for asserting that the foreclosing party has the right to foreclose, including, but not limited to, certification of the chain of title and ownership of the note and mortgage from the date of the recording of the mortgage being foreclosed upon. The third party loan servicer shall provide such certification to the borrower with the notice of

---

[9] While not germane to the issue, the Court acknowledges that the Bank Defendants made the original Note available for inspection at the September 25, 2018 hearing.

foreclosure, provided pursuant to M.G.L. c. 244 § 14 and shall also include a copy of the note with all required endorsements.

209 MASS. CODE REGS. § 18.21A(2)(c). On March 23, 2017, Wells Fargo sent Plaintiffs a certification pursuant to the above regulation, which stated: "A copy of the Note and any endorsements and/or allonges, if any, is attached hereto and incorporated herein." Complaint: Exhibit PP (209 C.M.R. 18.21A(2)(c) certification). However, the copy of the Note included therewith failed to show all of its endorsements; it contained only one undated endorsement, in blank, from Gateway. Dkt. no. 3-5, at p. 15. The record reveals that at least two other endorsements exist: one with the blank Gateway endorsement filled in to reflect a transfer to Wells Fargo (dkt. no. 3-2, at p. 17), and another with a subsequent endorsement from Wells Fargo in blank (dkt. no. 3-4, at p. 25).

In the Court's view, given the plain text of the regulation, dismissal is warranted. Pursuant to common principles of statutory interpretation,[10] "'[e]very word in a statute should be given meaning,' and no word is considered superfluous." Commonwealth v. Matos, 941 N.E.2d 645, 651 (Mass. App. Ct. 2011) (quoting Commonwealth v. Disler, 884 N.E.2d 500, 510 (Mass. 2008)). In addition, statutory interpretation requires that words be accorded their ordinary meaning and approved usage. Commonwealth v. Anderson, 651 N.E.2d 1237, 1240 (Mass. App. Ct. 1995) (citing Hashimi v. Kalil, 446 N.E.2d 1387, 1389 (Mass. 1983)). Here, the regulation requires a servicer to provide the borrower "a copy of the note with all required endorsements." 209 MASS. CODE REGS. § 18.21A(2)(c) (emphasis added). Plaintiffs argue the regulation requires the servicer to provide a copy of the Note containing all endorsements. This interpretation ignores the legislature's chosen words.

---

[10] It is settled that a properly promulgated regulation carries with it the same force of law and deference to which statutes are entitled. Mass. Fed'n of Teachers, AFT, AFL-CIO v. Bd. of Educ., 767 N.E.2d 549, 557 (Mass. 2002).

That the adjective "all" is followed by a second adjective, "required," connotes the legislature's intent to use both words for their respective meanings. Had the legislature wished to require a loan servicer to provide <u>all</u> endorsements or allonges, then the word "required" would be superfluous. "Required," therefore, must have been chosen to convey its ordinary meaning.[11] The regulation thus obligates a servicer to provide a copy of the Note with any endorsement "required" to establish the foreclosing party's right to foreclose. Such was done here. The 18.21A(2)(c) certification stated Bank of America owned the Note and included a copy of the Note with a blank endorsement from Gateway. Dkt. no. 3-5, at p. 15. This endorsement is sufficient to prove ownership and enforceability. <u>Urbon v. JPMorgan Chase Bank, N.A.</u>, 17-cv-11302-DJC, 2017 WL 6379555, at *2 (D. Mass. Nov. 30, 2017). A blank endorsement entitles the bearer to enforce the instrument. <u>Courtney</u>, 922 F. Supp. 2d at 174; <u>see also</u> U.C.C. § 3-205(b).

This conclusion is consistent with <u>Urbon v. JPMorgan Chase Bank, N.A.</u> There, a plaintiff mortgagor alleged that the notice of sale he received was invalid because the servicer, Wells Fargo, failed to include "all endorsements and/or allonges" with the note pursuant to 209 C.M.R. 18.21A(2)(c). <u>Urbon</u>, 2017 WL 6379555, at *1. Wells Fargo had produced a copy of the note endorsed in blank, but the plaintiff alleged that a copy of the note with additional endorsements or allonges was not provided. <u>Id.</u> at *2. The plaintiff argued that such failure rendered the sale invalid. <u>Id.</u> The Court concluded that Wells Fargo had sufficiently shown

---

[11] "Required" ordinary means "stipulated as necessary to be done, made, or provided." <u>Required</u>, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/required?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Mar. 25, 2019). In other words, "requisite, necessary." <u>Required</u>, OXFORD ENGLISH DICTIONARY, http://www.oed.com/view/Entry/163259?rskey=1R5ThB&result=2&isAdvanced=false#eid (last visited Mar. 25, 2019).

itself to be the bearer of the Note, as it produced a copy of the note endorsed in blank and an affidavit proving possession.  Id.

For the above reasons, Plaintiffs' pleaded facts do not possess enough heft to show they are entitled to relief.  See Ruiz Rivera, 521 F.3d at 84.  Moreover, the factual allegations do not demonstrate any extreme or egregious conduct respecting the 18.21A(2)(c) certification.[12]

4.      Foreclosure Sale Price and Fair Market Value

Lastly, Plaintiffs allege that the Bank Defendants and Harmon violated chapter 93A when Bank of America purchased the Property at foreclosure sale for $522,000, an amount roughly $400,000 less than the fair market value of the Property.  Complaint, at p. 11 ¶ 19; id. at p. 38 ¶ 83.  This allegation lacks factual support sufficient to maintain a 93A claim.

A party exercising a power of sale pursuant to a mortgage "is bound to exercise good faith and put forth reasonable diligence."  Sher v. S. Shore Nat'l Bank, 274 N.E.2d 792, 794 (Mass. 1971) (citing Chartrand, 5 N.E.2d at 423).  This is especially true where the mortgagee-seller becomes the buyer of the property at the foreclosure sale.  Oyegbola v. DeSimone, No. 9346, 1996 WL 210689, at *3 (Mass. App. Div. Apr. 12, 1996) (citing Union Mkt. Nat'l Bank of Watertown v. Derderian, 62 N.E.2d 661, 663 (Mass. 1945)).  Disparity between a foreclosure sale price and fair market value alone is not sufficient to invalidate a foreclosure.  Edry v. R.I. Hosp. Tr. Nat'l Bank (In re Edry), 201 B.R. 604, 606 (D. Mass. Bankr. 1996) (collecting cases); see also Sher, 274 N.E.2d at 794 (stating that "mere inadequacy of price alone does not

---

[12] To the extent Plaintiffs allege that the actual 18.21A(2)(c) certification is misleading and deceptive because it states "[a] copy of the Note and any endorsements and/or alonges, if any, is attached hereto and incorporated herein," the claim still fails.  See dkt. no. 40, at p. 8 (Pls.' opp. to motion to dismiss); dkt. no. 3-5, at p. 11 (18.21A(2)(c) cert.).  The Bank Defendants concede that the copy of the Note provided with the certification contained only the Gateway endorsement in blank.  However, the record reveals that the quoted misstatement was not unfair, egregious, or intended to deceive.  For even if the most-recent version of the Note were provided with the certification (i.e., containing an endorsement in blank from Wells Fargo), Bank of America, as holder of the Note, would still be entitled to enforce the Note and foreclose.

necessarily show bad faith or lack of due diligence"). Indeed, "[a] low price for the collateral does not by itself indicate bad faith or lack of diligence in disposition of mortgaged real estate." Burke, 2000 WL 1273412, at *7 (quoting Pemstein v. Stimpson, 630 N.E.2d 608, 611 (Mass. App. Ct. 1994)). And while "disparity in price may be considered in connection with other allegations to support a finding of fraud or bad faith," Sher, 274 N.E.2d at 794, the circumstances here do not support Plaintiffs' allegation.

The complaint's attachments evidence reasonable care on the part of the Bank Defendants and Harmon in noticing and conducting the foreclosure sale. First, as discussed earlier, the sale was properly noticed pursuant to Mass. Gen. Laws ch. 244, § 14 by publishing a sale notice, in the form required by the statute, for the required duration. Second, despite Plaintiffs' allegations to the contrary, the Affidavit of Sale establishes that public proclamations adjourned the sale two times. Third, despite Plaintiffs' claims of no notice of adjournment, Harmon sent two letters to Plaintiffs to notify them of each sale adjournment. See dkt. no. 3-5, at p. 24 (Oct. 18, 2017 letter adjourning sale to Dec. 20, 2017); id. at 29 (Oct. 23, 2017 letter adjourning sale to Jan. 3, 2018). Fourth, the sale was competitive, as other parties bid at the January 3, 2018 sale. Indeed, two other parties bid $525,000 and $522,000 respectively, but each failed to perform. Id. at 62. Thereafter, the Property was sold to Bank of America with its own bid of $522,000. Id. These facts undermine the allegation that the Bank Defendants and Harmon failed to use good faith and reasonable diligence in noticing and conducting the foreclosure sale. To the contrary, they demonstrate the opposite.

Plaintiffs' allegation that the fair market value of the Property is well above the total debt owed (i.e. over $800,000), based upon "comparables"—other listings and recent sales within the

Southborough area[13]—is entirely unhelpful and largely irrelevant.  It ignores the undisputed

evidence of the condition of the Property:  It is unfit for human habitation.  Dkt. no. 3-3, at pp.

13, 44, 47.  It requires hundreds of thousands of dollars in remedial work to meet structural and

regulatory requirements.  Id. at 43–44, 46; dkt. no. 3-5, at pp. 74–75, 77.  It lacks a certificate of

occupancy.  Dkt. no. 3-3, at p. 44, 47; dkt. no. 3-4, at pp. 18–19; dkt. no. 3-5, at p. 74.  And

because foreclosure sales result in non-warranty purchases of properties "as is," it is no wonder

why the Property did not sell for an amount Plaintiffs wished it had, and even assuming its

market value was anywhere near the value of Plaintiffs' "comparables."  Seppala & Aho Constr.

Co. v. Petersen, 367 N.E.2d 613, 620 (Mass. 1977) ("It is a notorious fact that, when land is sold,

by auction, under a power contained in a mortgage, it seldom, if ever, brings a price which

reaches its real value.  If this is a hardship upon a mortgagor . . . it is owing to the contract which

he has made, and which the mortgagee has a right to have carried out." (quoting Austin v. Hatch,

34 N.E. 95, 95 (Mass. 1983))); Tarvezian v. Debral Realty, No. 921437, 1996 WL 1249891, at

*6 (Mass. Super. Ct. Sept. 27, 1996) ("In a forced sale context there is, however, no obligation or

expectation to obtain the fair market value of the foreclosure property." (citation omitted)); see

also Resolution Tr. Corp. v. Carr, 13 F.3d 425, 430 (1st Cir. 1993) ("Absent evidence of bad

faith or improper conduct, a mortgagee is permitted to buy the collateral at a foreclosure sale as

'cheaply' as it can . . . ." (quoting Cambridge Sav. Bank v. Cronin, 194 N.E. 289, 290 (Mass.

1935))).  Given this reality and the condition of the Property, there is no supported allegation of

self-dealing, or unfair or deceptive conduct, for this claim to survive dismissal.  The record "is

devoid of any indication beyond [Plaintiffs'] sheer speculation that there was any prospective

---

[13] Plaintiffs provided this explanation at the August 24, 2018 hearing.

purchaser who would have bid more than the price paid by [Bank of America]." Oyegbola, 1996 WL 210689, at *4. For these reasons, the claim is dismissed.

        C.        <u>Forbearance and Promissory Estoppel</u>

Wells Fargo sent Plaintiffs a letter dated March 8, 2011 (the "March 8 Letter") stating: "At this time, [Wells Fargo] does not anticipate any further foreclosure action until the litigation issues involving this property have been resolved." Dkt. no. 3-3, at p. 20. Plaintiffs allege that the Bank Defendants breached this promise when they took legal actions related to foreclosure in May 2012 and August 2016. Assuming, as Plaintiffs argue, that the litigation was not resolved until December 2016 with the conclusion of appellate review, Plaintiffs nonetheless fail to state a claim for which relief may be granted.

Under Massachusetts law, a valid contract requires the following essential elements: (i) an offer; (ii) acceptance; and (iii) consideration. Conte v. Bank of Am., N.A., 52 F. Supp. 3d 265, 268 (D. Mass. 2014). In order to prevail on a breach of contract theory, a plaintiff must demonstrate that: (i) the parties entered into a valid and binding agreement; (ii) the defendant breached the terms of the parties' binding agreement; and (iii) the plaintiff suffered damages as a result of the defendant's breach. Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007); Shri Gayatri, LLC v. Days Inns Worldwide, Inc., 15-cv-40104-TSH, 2018 WL 1542376, at *4 (D. Mass. Mar. 28, 2018). As Plaintiffs acknowledged at the August 24, 2018 hearing, they cannot maintain a breach of contract claim against the Bank Defendants on the basis of March 8 Letter, assuming the March 8 Letter contains a promise to forbear. I find the promise is not supported by consideration.

The theory of promissory estoppel "permits recovery if (1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial

character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise. Loranger Constr. Corp. v. E.F. Hauserman Co., 374 N.E.2d 306, 308 (Mass. App. Ct. 1978), aff'd, 384 N.E.2d 176 (Mass. 1978). To succeed on a promissory estoppel claim, a plaintiff must have reasonably relied to his detriment on an alleged promise. Cullen v. E.H. Friedrich Co., 910 F. Supp. 815, 825 (D. Mass. 1995). Because any reliance must be detrimental, damage must be shown. Id.

Plaintiffs contend the Bank Defendants first violated the promises made in the March 8 Letter when the Bank Defendants initiated foreclosure proceedings in May 2012. This allegation falls short. Wells Fargo filed an SCRA complaint against Plaintiffs in Massachusetts Land Court in May 2012, which resulted in a judgment concluding that Plaintiffs were not entitled to the benefits of the SCRA. Actions taken to comply with the SCRA are not in themselves part of the foreclosure process. Beaton v. Land Court, 326 N.E.2d 302, 305 (Mass. 1975); see also Cazales v. HSBC Bank, NA, 12-cv-10263-RGS, 2012 WL 1969320, at *1 n.9 (D. Mass. June 1, 2012). They "occur independently of the actual foreclosure itself and of any judicial proceedings determinative of the general validity of the foreclosure." HSBC Bank USA, N.A. v. Matt, 981 N.E.2d 710, 715 (Mass. 2013) (quoting Beaton, 326 N.E.2d at 305).

Plaintiffs contend that Bank Defendants next breached the promise contained in the March 8 letter when on August 31, 2016 Wells Fargo sent Plaintiffs a 90-day right to cure notice. This claim falls short as well. "A homeowner's right to cure a default is a preforeclosure undertaking that, when satisfied, eliminates the default and wholly precludes the initiation of foreclosure proceedings in the first instance . . . ." Schumacher, 5. N.E.3d at 890. Because the 90-day notice is not part of the foreclosure process, its delivery did not breach any alleged promise to refrain from initiating foreclosure proceedings.

Yet even assuming arguendo that nonjudicial foreclosure was initiated in August 2016 and that the promise to forbear was breached, Plaintiffs do not allege facts sufficient to demonstrate that the commencement of foreclosure, just months prior to the resolution of their state court litigation, produced any actionable damages as a result of some detrimental reliance. In fact, Plaintiffs averred at the September 25 hearing that they suffered no damages because of the August 2016 90-day notice. And while they also stated at the hearing that they would not have dedicated years' worth of costs and expenses to the state litigation and appeals process had they known that the Bank Defendants would pursue foreclosure at some future time, a belief that a bank would agree to never foreclose is unreasonable, and the Bank Defendants never promised to never foreclose.[14] Finally, Plaintiffs incurred these litigation costs well before August 2016; indeed, just four months later the appeals process was concluded. For these reasons, Plaintiffs' allegations of reasonable reliance on the March 8 Letter are conclusory, and fail to state a plausible claim under contract or quasi-contract principles. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.

D.     Foreclosure Deed and Limited Power of Attorney

Plaintiffs allege that the foreclosure deed is void because the Limited Power of Attorney ("POA") referenced therein does not authorize Wells Fargo to execute documents related to the Mortgage. This argument does not accurately reflect the record. While the POA states that the document is "intended to cover Actions, as such term is defined herein, taken in the name of Bank of America, N.A., is [sic] the successor by merger to BAC Home Loans Servicing, LP,

---

[14] Moreover, the agreement to forbear is prefaced with the qualifying phrase "at this time." Dkt. no. 3-3, at p. 20 ("At this time, [Wells Fargo] does not anticipate any further foreclosure action until the litigation issues involving this property have been resolved."). As the Bank Defendants correctly note, even if the agreement constituted a promise, it was not an unqualified commitment, and the better reading of the letter indicates that Wells Fargo would reassess foreclosure options as litigation unfolded.

formerly known as Countrywide Home Loans Servicing LP,"[15] this language appears in a footnote and clearly is intended to indicate that the POA includes additional mortgages upon which Wells Fargo is authorized to act. In context, these two lines of text footnote the body of the POA, which is over three pages long, authorizes ten comprehensive "Actions"–including the institution of foreclosure proceedings and issuance of foreclosure deeds (Actions 1 and 8, respectively)—and specifically authorizes Wells Fargo to service and take other legal action respecting Bank of America-owned mortgages. Plaintiffs' claim that the POA failed to authorize Wells Fargo to execute a foreclosure deed on behalf of Bank of America ignores the very text of the POA, and is without merit.

Yet even if the POA restricted Wells Fargo's authority, Plaintiffs lack standing to challenge the validity of the POA or the foreclosure deed.[16] Under Massachusetts law, mortgagors have 'standing only to challenge a mortgage assignment as invalid, ineffective, or void' and not 'to challenge shortcomings in an assignment that render it merely voidable at the election of one party.'" Maxwell v. MTGLQ Inv'rs, L.P., 18-cv-11885-FDS, 2019 WL 438343, at *4 (D. Mass. Feb. 4, 2019) (quoting Wilson v. HSBC Mortg. Servs., Inc., 744 F.3d 1, 9 (1st Cir. 2014)). Here, Plaintiffs' claim respecting the POA is not predicated on an argument that Bank of America had no ownership interest in the Mortgage. See Maxwell, 2019 WL 438343, at *4 ("Here there are no plausible allegations that the assignors in question did not properly hold the mortgage . . . ."). The alleged defect in the POA, assuming arguendo there is one, amounts, at best, to a "procedural infirmity[y]" that "could only make the [POA] voidable, rather than

<hr>

[15] The Limited Power of Attorney was recorded in the Registry of Deeds on April 6, 2017, as document number 34312, in Book 56943, page 349 et seq. While not appended to the complaint, it is an official public document that may be considered on a motion to dismiss. Rivera, 575 F.3d at 15 (quoting Alt. Energy, Inc., 267 F.3d at 33).

[16] Standing is a jurisdictional issue and may considered by the Court on its own initiative. Spenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st Cir. 2001).

void." Id. Under Massachusetts law, Plaintiffs therefore lack standing to challenge the POA and, as a result, the validity of the foreclosure deed. See id. (concluding mortgagor lacked standing to challenge a power of attorney that failed to reference the mortgaged property because the defect amounted to a voidable issue only).

     E.    <u>Violation of Chapter 176D as to First American</u>

The complaint includes a cause of action titled "MGL 176D as to First American Title." It alleges that First American "wrongfully denied [Plaintiffs'] title claim" and that "[t]he evidence . . . will show that [First American] did not offer any settlement when [its] liability under [Plaintiffs'] policy became clear." Complaint, at p. 26 ¶ 52; <u>see also</u> <u>id.</u> at p. 27 ¶ 57 (discussing lack of settlement offer). The Court will treat Plaintiffs' claim as alleging "unfair or deceptive acts or practices" with respect to First American's "claim settlement practices." See MASS. GEN. LAWS ch. 176D, § 3(9).

In its motion to dismiss, First American contends that Plaintiffs lack standing to bring a claim pursuant to 176D because the statute does not contain a private right of action. Dkt. no. 21, at pp. 7–8. As an initial matter, it is true that an insured claimant's assertions under chapter 176D do not create a private cause of action. MASS. GEN. LAWS ch. 176D, §§ 6, 7 (affording Commissioner of Insurance exclusive authority to enforce the chapter); <u>Ryan v. Fallon Cmty. Health Plan, Inc.</u>, 921 F. Supp. 34, 38 (D. Mass. 1996). However, the law is settled that an individual claiming an injury by virtue of an unfair claim settlement practice prohibited by chapter 176D is entitled to bring suit for such violation pursuant to the private right of action afforded to individuals in chapter 93A. MASS. GEN. LAWS ch. 93A, § 9; <u>Hopkins. v. Liberty Mut. Ins. Co.</u>, 750 N.E.2d 943, 949–50 (Mass. 2001); <u>Silva v. Steadfast Ins. Co.</u>, 35 N.E.3d 401, 406 (Mass. App. Ct. 2015), <u>appeal denied</u>, 40 N.E.3d 553 (tbl.) (Mass. Oct. 2, 2015) (stating

chapter 93A, § 9 "has been amended to allow consumers to bring [] 93A claims alleging violations of [] 176D without regard to whether those violations constitute an unfair business practice under [] 93A, § 2");  Bolden v. O'Connor Café of Worcester, Inc., 734 N.E.2d 726, 730 n.8 (Mass. App. Ct. 2000).  This is because chapter 93A § 2 "incorporates [chapter 176D]," and an insurer that has violated a provision of the latter "has [also] violated the prohibition in [93A § 2] against the commission of unfair or deceptive acts or practices."  Hopkins, 750 N.E.2d at 950.[17]

Notwithstanding the above, Plaintiffs' claim against First American fails for a number of reasons.  First, chapter 93A § 9(3) directs a complainant to mail "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" at least thirty days prior to the filing of any action for relief under chapter 93A. MASS. GEN. L. ch. 93A, § 9(3).  Plaintiffs fail to allege or otherwise show that they

---

[17] First American relies on M. DeMatteo Construction Co. v. Century Indemnity Co., 182 F. Supp. 2d 146 (D. Mass. 2011) in support of its proposition that Plaintiffs lack standing to sue for an alleged violation of chapter 176D. Section 9(1) of chapter 93A expressly allows a § 9 claimant to bring an action against an insurer for a violation with respect to unfair or deceptive acts or practices with respect to claim settlement practices under § 3(9) of chapter 176D.  Id. at 160; see also Caira v. Zurich Am. Ins. Co., 76 N.E.3d 1002, 1009 (Mass. App. Ct. 2017) ("Any person whose rights have been affected by an insurance practice that violates [chapter] 176D, § 3(9), may sue under [chapter] 93A.").  In DeMatteo, Plaintiff was not an individual claimant, but a business engaged in commerce.  Id. In that case, this Court articulated the differences between individual and business claimants:

> Sections 9 and 11 of chapter 93A provide private causes of action for violations of Massachusetts General Laws chapter 93A, section 2, but for different classes of plaintiffs.  A plaintiff under section 9 is defined as "[a]ny person, other than a person entitled to bring action under section eleven of this chapter."  Mass. Gen. Laws ch. 93A, § 9(1).  A plaintiff under section 11 is defined as "[a]ny person who engages in the conduct of any trade or commerce."  Id. § 11.  All that is required for a plaintiff to fall within the ambit of section 11 is some transaction in a business context.  Int'l Fid. Ins. Co. v. Wilson, 387 Mass. 841, 852, 443 N.E.2d 1308 (1983).  [Plaintiff] is therefore a section 11 plaintiff, not a section 9 plaintiff.

DeMatteo, 182 F. Supp. 2d at 160 n.9.  Because the plaintiff in DeMatteo was not a § 9 claimant, it was thus not able to take advantage of the private right of action for individual claimants provided in chapter 93A § 9. See id. Here, Plaintiffs are individuals "other than [people] entitled to bring action under section eleven of [chapter 93A] . . . whose rights are affected by another person [allegedly] violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D" and thus may be considered § 9 individual claimants.  Mass. Gen. Laws ch. 93A, § 9(1).  Plaintiffs therefore may avail themselves of the private right of action afforded to § 9 plaintiffs to bring private claims for unfair or deceptive acts or practices in the business of insurance in violation of chapter 176D § 3.

mailed to First American a 93A demand letter thirty days prior to bringing suit. "Such a failure is fatal on a motion to dismiss." McMahon v. Dig. Equip. Corp., 944 F. Supp. 70, 77 (D. Mass. 1996) (citing City of Boston v. Aetna Life Ins. Co., 506 N.E.2d 106, 109 (Mass. 1987)).

Second, putting aside the failure to satisfy Mass. Gen. Laws ch. 93A, § 9, Plaintiffs do not allege how First American's treatment of their December 2009 claim submission was unfair or deceptive in any respect. The record reveals that in December 2009, Plaintiffs submitted a claim to First American alleging that "title is unmarketable; a mechanics' lien exists against the Property; the house is not built to code; there is no Certificate of Occupancy; there was a falsified land survey; zoning violations, Order of Conditions violations, and wetland violations." Dkt. no. 3-5, at p. 80; dkt. no. 21-1 (Plaintiffs' claim submission).[18] Appended to the complaint is First American's February 2010 response to Plaintiffs' claim submission, which does not demonstrate any unfair or deceptive act on the part of First American. Dkt. no. 3-5, at pp. 80–84 (containing letter response dated February 9, 2010). The response explains over the course of three pages how the claim submission does not allege an actual issue respecting title to the Property, nor any actionable claim for which the title policy provides coverage. Id. at pp. 80–82. In short, Plaintiffs' claim against First American is conclusory, lacks facts sufficient to render the claim plausible, and is subject to dismissal. Iqbal, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' . . . will not do." (quoting Twombly, 550 U.S. at 555)).

---

[18] While Plaintiffs' December 9, 2009 insurance claim submission is not appended in full to Plaintiffs' complaint, documents referred to in the complaint and central to a plaintiff's claim may be considered on a motion to dismiss. Rivera, 575 F.3d at 15; Alt. Energy, Inc., 267 F.3d at 33.

Third, to the extent the claim arises under chapter 176D—and even if the Court considers the claim as one under chapter 93A—such claim is time-barred.[19] "Actions arising on account of violations of any law intended for the protection of consumers, including . . . chapter ninety-three A [and] . . . chapter one hundred and seventy-six D . . . whether for damages, penalties or other relief . . . shall be commenced only within four years next after the cause of action accrues." MASS. GEN. LAWS ch. 260, § 5A (setting forth statute of limitations for consumer protection actions). Here, the best reading of Plaintiffs' allegations against First American shows that the complained-of conduct took place in February 2010, over eight years ago, when First American responded to and resolved Plaintiffs' December 2009 claim submission. See Complaint, at p. 26 ¶ 52; id. at p. 27 ¶ 57; see also dkt. no. 3-5 at pp. 80–82 (February 9, 2010 letter to Plaintiffs in response to claim submission); dkt. no. 21-1 (Plaintiffs' claim submission). As such, any cause of action relating to the February 2010 denial of Plaintiffs' claim submission is barred by the applicable statute of limitations. MASS. GEN. LAWS ch. 260, § 5A. Such claim would also be time-barred to the extent it arises under common law tort or contract principles. See MASS. GEN. LAWS ch. 260, §§ 2, 2A.

For the reasons set forth above, Plaintiffs' claims against First American are dismissed. Even if Plaintiffs were able to plead a plausible claim against First American, they would have had to do so years ago. See MASS. GEN. LAWS ch. 260, §§ 2, 5A.

---

[19] It is established that "[g]ranting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998); see also Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989) (stating "when a defendant raises an affirmative defense that is obvious on the face of plaintiff's pleadings, and the court makes its ruling based only on those pleadings, the motion is treated as a Rule 12(b)(6) motion to dismiss.").

F.     Violation of Truth in Lending Act

The Truth in Lending Act ("TILA"), originally Title I of the Consumer Credit Protection Act, was enacted by Congress to "safeguard the consumer in connection with the utilization of credit by requiring full disclosure of the terms and conditions of finance charges in credit transactions or in offers to extend credit."  Truth in Lending Act of 1968, Pub. L. No. 90-321, 82 Stat. 146 (codified as amended in scattered sections of 15 U.S.C).  "In general, TILA requires creditors to make certain disclosures to borrowers in connection with the provision of credit." Lariviere v. Bank of N.Y. as Tr., 9-cv-515, 2010 WL 2399583, at *5 (D. Me. May 7, 2010) (citing Sullivan v. Greenwood Credit Union, 520 F.3d 70, 73 (1st Cir. 2008)).  Here, Plaintiffs allege that the Bank Defendants' foreclosure conduct violated TILA.  The complaint is not well-pleaded on this issue.  The following presents the Court's best efforts to glean Plaintiffs' allegations respecting TILA.

First, Plaintiffs claim they were not given notice that MERS assigned the Mortgage to Bank of America.  TILA provides that "no later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer."  15 U.S.C. § 1641(g).  Yet TILA further requires that any action against an assignee for violation of this provision, and any other action for damages, must be brought "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e); see also Sykes v. RBS Citizens, N.A., 2 F. Supp. 3d 128, 142 (D.N.H. 2014); Rodrigues v. Members Mortg. Co., 323 F. Supp. 2d 202, 209–10 (D. Mass. 2004).  In the alternative, any action for rescission based on improper material disclosure must be brought within three years of the date of the transaction at issue.  15 U.S.C. § 1635(f); Rodrigues, 323 F. Supp. 2d at 209–10.  Here, the Mortgage was assigned to Bank of

America on April 2, 2011, and the assignment was recorded on August 1, 2011. Dkt. no. 23-2, at p. 2. The statute of limitations thus precludes recovery on this allegation.[20]

Second, the Plaintiffs claim that Bank of America misrepresented that they were the proper owners of the Mortgage at the time foreclosure proceedings were initiated. They contend that Wells Fargo owned the mortgage loan and therefore that Bank of America did not have authority to proceed with foreclosure. There is no reason to belabor the analysis respecting Bank of America's lawful Assignment of Mortgage. It initiated foreclosure proceedings against the Property five years after it had acquired the Mortgage from MERS, the nominee of Gateway. Although the statute of limitations also bars this claim, the record demonstrates that is it implausible. Simply, the complaint does not contain a "factual predicate concrete enough to warrant further proceedings." DM Research, Inc., 170 F.3d at 55.

Third, Plaintiffs allege that the Bank Defendants failed in their responsibility to mitigate losses. While unclear how this allegation embodies an actionable claim under TILA, the analysis herein[21] demonstrates that the price Bank of America paid for the Property through foreclosure does not evince bad faith, lack of reasonable care, or a failure on part of the Bank Defendants or Harmon to mitigate loss. As such, this allegation is also implausible.

Fourth, Plaintiffs allege they were owed a duty to be notified that their mortgage loan closed without a certificate of occupancy.[22] Complaint, at pp. 4–5 5. To support this allegation

---

[20] Here, the pleadings leave no doubt that the allegations are time-barred. See supra note 19 and accompanying text (citing Aldahonda-Rivera, 882 F.2d at 592; LaChapelle, 142 F.3d at 509).

[21] See supra § III.A.4.

[22] The record is unclear as to whether Plaintiffs' mortgage loan actually closed without a certificate of occupancy. Attached to the complaint is an unsigned letter dated March 24, 2009 and seemingly written by Plaintiffs' prior counsel. Dkt. no. 3-5, at p. 74. Within this letter Plaintiffs' attorney states that the loan closed with a "temporary certificate of occupancy." Id. Nevertheless, whether or not the loan closed without a certificate of occupancy does not, in the Court's view, give rise to a plausible claim for relief for the reasons herein.

Plaintiffs offer a document they received as part of their loan origination package, which states that a certificate of occupancy was required at loan closing. Dkt. no. 3-2, at p. 19. However, the actual language protects the mortgage lender, giving it the option to decline to fund if a certificate of occupancy was not produced. For instance, the document states that the conditions of closing "must be met to our satisfaction": "our" refers to the lender. Id. It further provides: "If [pre-closing] conditions are not received within the specified time frame, or if the conditions do not meet our underwriting guidelines[,] we reserve the right to postpone or cancel settlement," and that the "[f]ailure to supply satisfactory information/documentation required [at closing] may result in the cancellation of your loan settlement." Id. Such "information/documentation" included a certificate of occupancy. Id. Contrary to Plaintiffs' assertions, this language does not preclude the lender from closing a loan absent a certificate of occupancy, nor does it create a duty on the part of the lender to determine whether or not there was a certificate of occupancy at closing and to so notify Plaintiffs.

For these reasons, Plaintiffs' TILA claims, as this Court understands them, do not present "a <u>factual</u> predicate concrete enough to warrant further proceedings," and thus are subject to dismissal. <u>DM Research, Inc.</u>, 170 F.3d at 55 (emphasis in original).

G.     <u>Violation of the Fair Debt Collection Practices Act</u>

Plaintiffs claim the Bank Defendants and Harmon violated the Fair Debt Collection Practices Act ("FDCPA") in several instances. Specifically, they allege that Bank of America was not entitled to commence and maintain the May 2012 SCRA action against Plaintiffs because Wells Fargo held the Mortgage and Note (and also serviced the loan). They claim the Assignment of Mortgage from MERS to Bank of America was "bogus," that Wells Fargo was

missing from the chain of title/assignments, and that for these reasons the Bank Defendants' foreclosure proceedings violated the FDCPA.

To make out a plausible violation of the FDCPA, Plaintiffs must allege that the Defendants attempted to collect a debt using harassing or abusive means. 15 U.S.C. § 1692(d). Here, Plaintiffs' claims are largely unsupported and are subject to dismissal. For reasons addressed earlier, Plaintiffs have failed to state a plausible claim with respect to Bank of America's authority to foreclose, the Assignment of Mortgage from MERS to Bank of America, and Wells Fargo's participation as loan servicer.[23] Additionally, "[i]t is not an unfair practice under the FDCPA to take or threaten to take nonjudicial action to effect dispossession in connection with the enforcement of a valid security interest." Lippincott v. JPMorgan Chase Bank, N.A., 14-cv-14400-GAO, 2015 WL 4380584, at *1 (D. Mass. July 16, 2015) (citing 15 U.S.C. § 1692f(6); Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 232–33 (D. Mass. 2011); Beadle v. Haughey, 04-cv-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005) ("Nearly every court that has addressed the question has held that foreclosing on a mortgage is not debt collection activity for purposes of the FDCPA.")). Moreover, while Plaintiffs' allege that the Bank Defendants committed fraud by unlawfully attempting to enforce the Mortgage and Note, this allegation is conclusory, implausible for the reasons stated herein, and fails to "state with particularity the circumstances constituting fraud." See Fed. R. Civ. P. 9(b). For these reasons, Plaintiffs' first allegation fails.

Second, Plaintiffs allege that a statute of limitations barred the Bank Defendants' foreclosure proceedings, and therefore the Bank Defendants' efforts to foreclose violated the FDCPA. They argue that under Massachusetts law the statute of limitations for a foreclosure

---

[23] See supra § III.A.2 (discussing valid assignment to Bank of America and Wells Fargo's lack of ownership interest in the Mortgage).

remedy begins to run once a loan is accelerated and payable in full. Complaint, at pp. 34–35; see also dkt. no. 3-3, at p. 125 (Plaintiffs' February 25, 2017 letter to Harmon). In other words, Plaintiffs claim that the Mortgage "is obsolete and [the] foreclosure is void." Dkt. no. 3-3, at p. 125. The so-called Obsolete Mortgage Statute provides in relevant part:

> A power of sale in any mortgage of real estate shall not be exercised and an entry shall not be made nor possession taken nor proceeding begun for foreclosure of any such mortgage after the expiration of, in the case of a mortgage in which no term of the mortgage is stated, 35 years from the recording of the mortgage or, in the case of a mortgage in which the term or maturity date of the mortgage is stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period.

MASS. GEN. LAWS ch. 260, § 33. The First Circuit has recently held that § 33 in no way suggests that the acceleration of a note impacts the limitations period for a mortgagee's right to foreclose. Harry v. Countrywide Home Loans, Inc., 902 F.3d 16, 19 (1st Cir. 2018); see also Junior v. Wells Fargo Bank, N.A., 17-cv-10460-RGS, 2017 WL 1199768, at *1 (D. Mass. Mar. 30, 2017) (noting that plaintiff's argument that acceleration of the note also accelerated the maturity date of a mortgage had been "squarely rejected" by three other judges of this Court, and holding the same). This Court is bound by the First Circuit's decision in Countrywide, and finds that the acceleration of the Note did not render the Mortgage obsolete. Countrywide, 902 F.3d at 19. For these reasons, Plaintiffs' claim is not plausible and thus is subject to dismissal. Twombly, 550 U.S. at 570.

IV.    MOTION FOR PRELIMINARY INJUNCTION

On a motion for a preliminary injunction, the burden rests with the movant to prove that he "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (Roberts, C.J.); see

36

also Fryzel v. Mortg. Elec. Registration Sys., Inc., 719 F.3d 40, 44 (1st Cir. 2013).  "The sine qua non of this four-party inquiry is likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity."  New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).  For the reasons stated herein, Plaintiffs' complaint is subject to dismissal.  As a result, Plaintiffs cannot demonstrate a likelihood of success on the merits of their claims and therefore are not entitled to injunctive relief.  See Hicks v. Ryan, No. 13-cv-10709-RGS, 2013 WL 1992679, at *15 (D. Mass. May 9, 2013) (denying request for injunctive relief where movant failed to demonstrate a likelihood of success on the merits because his claims were subject to dismissal).  Their motion (dkt. no. 4) thus is denied.

## CONCLUSION

For the foregoing reasons, First American's motion to dismiss (dkt. no. 19) is GRANTED; Harmon's motion to dismiss (dkt. no. 12) is GRANTED; and the Bank Defendants' motion to dismiss (dkt. no. 22) is GRANTED.  Having determined that Plaintiffs' complaint is subject to dismissal in its entirety, their motion for injunctive relief (dkt. no. 4) is DENIED.

So concludes this matter.

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE